UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES L. ZUBILLAGA,<br><br>  Plaintiff,<br><br>  v.<br><br>CHERYL R. BRANSFORD, individually and as Trustee under the CHERYL R. BRANSFORD TRUST, dated November 7, 2014,<br><br>  Defendant. | Case No. 3:22-cv-00216-AKB<br><br>**MEMORANDUM DECISION AND ORDER RE MOTIONS FOR SUMMARY JUDGMENT** |

Pending before the Court are the parties' cross-motions for summary judgment. (Dkts. 19, 27). The Court held a hearing on the motions on November 30, 2023. For the reasons discussed, the Court grants Plaintiff James Zubillaga's motion and denies Defendant Cheryl Bransford's motion.

## I. BACKGROUND

In August 2013, Zubillaga purchased approximately 1,000 acres of undeveloped real property in Idaho County from Bransford. As part of this transaction, the parties executed a Deed of First Right of Refusal ("FROR") related to 675 acres, which Bransford owns and which is adjacent to the 1,000 acres Zubillaga purchased from her. (Dkt. 22-1 at Ex. A). In relevant part, the FROR provides:

> [F]or a good and valuable consideration as part of the overall transaction . . . [Bransford] grants [to Zubillaga] the following interest in real property[:]  Before [Bransford] may accept any good faith offer to purchase the [675 acres], in writing, that offer must be communicated to [Zubillaga].  [Zubillaga] shall then have sixty (60) days in which to advise [Bransford] in writing whether he will meet that offer. If [Zubillaga] does decide to meet the good faith third party offer earlier received

**MEMORANDUM DECISION AND ORDER RE MOTIONS FOR SUMMARY JUDGMENT - 1**

> by [Bransford], then [Zubillaga] must complete that transaction in accordance with the terms of the earlier third party offer.
>   If, however, [Zubillaga] shall choose not to meet the offer or if he fails to communicate his decision to [Bransford] in writing within the sixty (60) day period of time, then [Bransford] shall be entitled to complete the transaction with the original third party offeror.

(*Id.*). The parties recorded the FROR with the Idaho County Recorder's Office.[1] (*Id.* at ¶ 3).

In December 2021, Bransford and Robert and Dave Blewett executed a Real Estate Purchase and Sale Agreement for the 675 acres in consideration of a like-kind exchange under Internal Revenue Code § 1031. (Dkt. 22-1 at Ex. F). Sometime thereafter, Bransford provided this agreement to Zubillaga. In February 2022, Zubillaga responded to Bransford, stating the agreement was "not valid" because Bransford was "not permitted to accept an offer on the property until [Zubillaga had] been allowed [his] full 60 days to evaluate the proposed contract" and informing Bransford he intended to "use [the] full 60 days to evaluate the deal" being proposed. (*Id.* at Ex. G).

On March 1, 2022, Robert Blewett signed a second Real Estate Purchase and Sale Agreement ("the Blewett Offer"), which is at issue in this case. (*Id.* at Ex. H, p. 53). The Blewett Offer provided Robert Blewett would purchase the 675 acres from Bransford either for a 1031 exchange or for $1,600,000 in cash. (*Id.*). Further, the Blewett Offer acknowledged the FROR "encumbered" the 675 acres. (*Id.*). On March 7, Bransford's attorney, Brennan Wright, emailed Zubillaga's attorney, Terry Copple, a copy of the Blewett Offer. (*Id.* at p. 46). Wright stated that the Blewett Offer was "a good faith [third]-party offer to purchase the subject property" and

---

[1] The FROR also stated it did not apply to any transfer by Bransford to a trust. (Dkt. 22-1 at Ex. A). In November 2014, Bransford conveyed the 675 acres to herself as trustee for her living trust. (*Id.* at Ex. E). The parties do not dispute the FROR permitted this conveyance and continued "to run with the land." (*Id.* at Ex. A).

**MEMORANDUM DECISION AND ORDER RE MOTIONS FOR SUMMARY JUDGMENT - 2**

"amend[ed] and supersed[ed] the prior offer made by Blewetts" and that Bransford "currently intends to accept the [Blewett Offer] in the event [Zubillaga] does not notify [Bransford] in writing within 60 days of the date of [the] letter of [Zubillaga's] agreement to purchase the subject property" under the same terms as the Blewett Offer. (*Id.* at pp. 46-47). Thereafter, Zubillaga incurred costs in conducting due diligence, including obtaining a title commitment and an appraisal of the 675 acres. (Dkt. 22 at ¶ 14).

On April 19, 2022, Copple phoned Wright, notified him that Zubillaga would meet the cash sale price in the Blewett Offer of $1,600,000, and represented Zubillaga's intention to exercise the FROR would be confirmed in writing. (*Id.* at ¶ 15). On that same day, Wright phoned Bransford's daughter (who was also Bransford's real estate agent) and notified her that Zubillaga intended to exercise the FROR. (Dkt. 23 at Tr. p. 71). The following day, on April 20, Bransford's daughter told Bransford that Zubillaga intended to exercise the FROR. (*Id.* at Tr. p. 72).

Bransford then met with her "adult children" on the evening of April 20, at which time her sons asked her not to sell the property. (*Id.* at Tr. p. 53). Thereafter, at about 10:30 p.m.[2] on April 20, Bransford notified her daughter that Bransford was not going to sell the property to Zubillaga. (Dkt. 24 at Tr. p. 19). A couple of hours later, at about 12:30 a.m. on April 21, Bransford signed a document entitled "Contract Termination." (Dkt. 35-1 at Ex. D). This document provided the parties to the Blewett Offer mutually released each other from any obligation to buy, sell, or exchange the property. Later at about 9 a.m. on April 21, Wright emailed a letter to Copple stating Bransford "decided to take the [property] off the market," "no longer intends to accept [the Blewett Offer]," and "revokes the notice of her intent to accept [the Blewett

---

[2] For consistency, the referenced times herein are Pacific Standard Time, although some of the communications reflect the times in Mountain Standard Time.

**MEMORANDUM DECISION AND ORDER RE MOTIONS FOR SUMMARY JUDGMENT - 3**

Offer]" and "any offer to sell [the property] to [Zubillaga]." (Dkt. 22-1 at Ex. L). Copple responded on April 21 by sending Wright a letter signed by Zubillaga and stating Zubillaga was exercising his right under the FROR. (*Id.* at Ex. K). Copple then followed up with another letter to Wright on April 22, objecting to Bransford's decision not to sell the property. (*Id.* at Ex. M). Regardless, Bransford did not sell the property to Zubillaga.

In May 2022, Zubillaga brought this action against Bransford, individually and in her capacity as a trustee, seeking specific performance of the agreement between Bransford and Zubillaga.[3] After discovery, the parties filed cross-motions for summary judgment. (Dkts. 19, 27).

## II. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). The trial court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the court must "view[ ] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could

---

[3] On summary judgment, Zubillaga also asserts Bransford's conduct breached the covenant of good faith and fair dealing. Zubillaga's complaint, however, does not allege a claim for breach of the covenant. (*See* Dkt. 1; Dkt. 21 at pp. 17-18). Accordingly, the Court declines to rule on the purported claim. *See* Fed. R. Civ. P. 8(a)(2) (requiring "short and plain statement of the claim showing the pleader is entitled to relief").

return a verdict in the respondent's favor." *Id.* (citation omitted).  When the parties submit cross-motions for summary judgment, as in this case, the district court must consider each motion on its own merits.  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  Even if both parties assert there are no disputed factual issues, the court must determine whether disputed issues of material fact preclude summary judgment.

### III.  ANALYSIS

In their cross-motions for summary judgment, Zubillaga and Bransford both assert that the FROR is unambiguous and that the undisputed facts support their respective positions.  Zubillaga contends the FROR ripened into an option contract, which was irrevocable for a period of sixty days once Bransford gave Zubillaga notice on March 7, 2022, that she intended to accept the Blewett Offer unless Zubillaga exercised his rights under the FROR.  In support, he notes the FROR uses mandatory language to describe his right to decide to meet a third-party offer.  Specifically, it unambiguously states Zubillaga "***shall*** then have sixty (60) days in which to advise [Bransford] in writing whether he intends to meet [an] offer."  (Dkt. 22-1 at Ex. A (emphasis added)).  The undisputed facts show Zubillaga provided Bransford written notice of his intent to meet the offer well before the sixty-day period expired.

In contrast, Bransford contends she had the right to revoke her tender of the Blewett Offer to Zubillaga at any time before receiving Zubillaga's written notification that he intended to meet the Blewett Offer.  In support, she notes the FROR does not characterize the right as an option and does not expressly provide her tender of a third-party offer to Zubillaga is irrevocable.  Under this theory, the undisputed facts show Bransford revoked her tender of the Blewett Offer to Zubillaga on the morning of April 21 when Wright notified Copple that Bransford no longer intended to sell

the property and that this notice of revocation occurred *before* Copple—later the same day—sent Zubillaga's written notice of his intention to meet the Blewett Offer.

Resolution of the parties' debate turns on the interpretation of the meaning of the sixty-day provision in the FROR.  When a contract's language is clear and unambiguous, its interpretation is a question of law.  *Huber v. Lightforce USA, Inc.*, 367 P.3d 228, 245 (Idaho 2016); *Doyle v. Ortega*, 872 P.2d 721, 724 (Idaho 1994).  When interpreting a contract, the court begins with the document's language.  *Potlatch Educ. Ass'n v. Potlatch Dist. No. 285*, 226 P.3d 1277, 1280 (Idaho 2010).  Absent ambiguity, the court must construe the document based on its plain, ordinary, and proper meaning.  *Id.*  A contract is ambiguous if it is nonsensical or subject to two different, reasonable interpretations.  *Id.*

Idaho law recognizes the distinction between a right of first refusal and an option contract. A right of first refusal is fundamentally different than an option to purchase.  *Nicholson v. Coeur d'Alene Placer Mining Corp.*, 392 P.3d 1218, 1222 (Idaho 2017).  A right of first refusal is "a preemptive right to purchase" based on the preemptor "meeting the same terms and conditions of a third party's offer [that] the seller intends to accept."  *Gyurkey v. Babler*, 651 P.2d 928, 931 (Idaho 1982); *accord Tricore Invs., LLC v. Est. of Warren*, 485 P.3d 92, 118 (Idaho 2021); *Nicholson*, 392 P.3d at 1222.  By contrast, an option "constitutes an irrevocable offer by the optionor [that] continues for the period stated in the option."  *Damiano v. Finney*, 464 P.2d 522, 525 (Idaho 1970).  An option "creates a power of acceptance in the optionee."  *Id.*  The optionor cannot revoke the offer during the life of the option.  *Sutheimer v. Stoltenberg*, 896 P.2d 989, 993 (Idaho Ct. App. 1995).

Idaho case law does not address, however, whether a right of first refusal can, in certain circumstances, ripen into an irrevocable option.  The parties acknowledge no Idaho law addresses

this issue, and both cite persuasive authorities from other jurisdictions in support of their respective positions. Regardless, the only reasonable interpretation of the FROR in this case is the FROR's plain, unambiguous language grants Zubillaga sixty days in which to decide to meet the terms of the Blewett Offer and to advise Bransford of that decision. The inclusion of this mandatory sixty-day provision is significant. *See Glick v. Chocorua Forestlands Ltd. P'ship*, 949 A.2d 693, 701 (N.H. 2008), as modified on denial of reh'g (June 25, 2008) (concluding inclusion of time provision significant to interpretation of right). No language in the FROR limits Zubillaga's right. Although the FROR does not use the terms "option" or "irrevocable," the Court declines to infer from this fact that Zubillaga's right to consider purchasing the property is limited by Bransford's decision not to sell the property. *See id.* ("Given the mandatory nature of this time provision, as well as the lack of any language conditioning Glick's purchasing power upon the continued existence of the [Agreement], we hold that the Agreement granted Glick an irrevocable thirty-day option to purchase [the property].").

Numerous courts have reached the conclusion that a right of first refusal conditioned by a specified time within which to act on that right creates an irrevocable option contract once the property owner notifies the holder of the right of her intent to sell the property. For example, the Guam Supreme Court reached this conclusion in *Mobil Oil Guam Inc. v. Tendido*, Case No. CVA03-006, 2004 WL 1013367 (Guam May 7, 2004). In that case, Tendido leased a premises to Mobil, and the lease agreement contained a provision stating that:

> Should [Tendido] receive an acceptable offer for the purchase of the leased premises from any third party, [Tendido] shall forthwith submit such offer to [Mobil] and [Mobil] shall be entitled for a period of ninety (90) days after receipt of the offer within which to elect whether or not [Mobil] will purchase the leased premises on the terms and conditions set forth in the offer. . . .

*Id.* at *4. Under this provision, Tendido notified Mobil she received "an acceptable offer from a third party." *Id.* at *1. Subsequently, she informed Mobil the third party had withdrawn its offer. *Id.* at *2. Despite the offer's withdrawal, Mobil thereafter notified Tendido that "it elected to purchase the [premises] on the terms and conditions set forth in the [third-party] offer." *Id.* When Tendido refused to sell the premises to Mobil, Mobil filed an action asking the court to declare that an enforceable contract for the premises existed between Tendido and Mobil. *Id.*

On appeal, Tendido argued "Mobil could not claim the benefit of the right of first refusal" after she informed Mobil the third party had withdrawn its offer. *Id.* at *4. In contrast, Mobil argued the right of first refusal "created an irrevocable option, to be held open for a period of ninety days"; "once the irrevocable option was created, Tendido had no power to revoke the offer during the ninety-day period"; and "because [Mobil] exercised its option within ninety days of [Tendido notifying it] of the third-party offer, an enforceable agreement existed between Mobil and Tendido for the sale of the [premise]." *Id.*

Addressing these arguments, the *Mobil* Court noted the parties' agreement "explicitly [gave] Mobil ninety days to accept Tendido's offer." *Id.* at *7. It ruled that rights "supported by consideration are irrevocable during their stated terms," regardless of whether the right expressly states it shall be irrevocable. Further, the court ruled that "because the [parties'] underlying lease was supported by consideration, [Mobil's] option was supported by consideration." *Id.* The court concluded that "when the language of a first refusal clause gives the lessee a specific time to elect to purchase the property, the opportunity for the lessee to exercise its right of first refusal must be held open for the stated amount of time" and that "the inclusion of this time limitation indicates that Mobil would be given the full ninety days to decide whether to purchase the [premise] under the terms of the third-party offer." *Id.*

In reaching its decision, the *Mobil* Court characterized its ruling as "the majority view on the issue." Indeed, numerous other courts have concluded, like *Mobil*, that a right of first refusal containing a specified timeframe ripens into an irrevocable option for that period once the property owner tenders a third-party offer. *See, e.g.*, *Glick*, 949 A.2d at 701 (citing *Mobil* with approval); *Riley v. Campeau Homes (Texas), Inc.*, 808 S.W.2d 184,188 (Tex. App. 1991) (ruling "right of first refusal ripens into an option when the owner elects to sell"); *Chapman v. Mutual Life Ins. Co. of New York*, 800 P.2d 1147, 1150 (Wyo. 1990) ("We agree with the view that when the condition precedent of the owner's intention to sell is met the right of first refusal 'ripens' into an option and contract law pertaining to options applies.") (citations omitted); *G.G.A., Inc. v. Leventis*, 773 P.2d 841, 846 (Utah Ct. App. 1989) (concluding notice of third-party offer created irrevocable option exercisable within ninety days); *Vorpe v. Key Island, Inc.*, 374 So. 2d 1035, 1036-37 (Fla. Dist. Ct. App. 1979) ("[Upon the] manifestation of intent to sell [a] right of first refusal [is] converted into an irrevocable option to purchase."); *Gilmore v. Letcher*, 508 S.W.2d 257, 262 (Mo. Ct. App. 1974) ( "When the owner does arrive at a decision to sell the property, then . . . the pre-emptive right . . . ripens into a full option."); *Henderson v. Nitschke*, 470 S.W.2d 410, 413 (Tex. Civ. App. 1971) (concluding that when lessor sends notice of third-party offer under provision, "the two, the provision and the notice, become an option, and a mutual contract arises when, and only when, the offer to sell is accepted by the optionee under the terms of the lease").

I acknowledge other courts have declined to interpret a right of first refusal as ripening into an irrevocable option for the period of time specified in the right. For example, Bransford relies heavily on *LIN Broadcasting Corp.*, 542 N.E.2d 629 (N.Y. 1989). In that case, LIN and Metromedia jointly owned two businesses subject to contracts giving "each party a right of first refusal to buy the other party's interest before the other party could sell to a third party." *Id.* at

630. These rights were subject to specified timeframes. One contract provided any partner desiring to sell its ownership interest "shall first offer" that interest to the other partners at the same price and on the same terms as a third-party offer and that the other partners had forty-five days after notification of the third-party offer to meet the offer. *Id.* Similarly, a second contract provided the sale of shares "shall be subject to a right of first refusal" and upon receiving notice of a third-party offer, the other stockholders "shall have" ten days to obtain an appraisal of the shares and "shall have the right to purchase the shares" within thirty days of receiving the appraisal. *Id.* at 630-31.

When Metromedia contracted with a third party to sell its interests in the businesses it owned with LIN, it notified LIN of the third-party contract. *Id.* at 631. After Metromedia and LIN engaged in discussions about the terms of the third-party contract, Metromedia notified LIN that "it had decided to retain its [interests in the businesses] and that the first refusal offers were no longer valid." *Id.* In response, LIN sent Metromedia "notices purporting to exercise its first refusal rights." *Id.* Subsequently, LIN filed "a specific performance action" to compel Metromedia to sell its interests to LIN. *Id.*

On appeal, the *LIN* Court addressed whether "a first refusal offer, once made, is irrevocable for the period specified in the first refusal clause." *Id.* at 633. The Court concluded a right of first refusal is not "transformed into a binding option . . . when the event triggering the first refusal rights takes place." *Id.* It reasoned a rule to the contrary would not "comport[] with general principles of contract law or with the theory of first rights of refusal" or "the general rule at common law that an offer may be withdrawn at any time before it is accepted." *Id.*

Unlike the *LIN* Court, I decline to construe the FROR under a general contract principle that contradicts the FROR's express language. A general principle of contract cannot defeat an

express term of the FROR. Although a seller can generally reject an offer, Bransford's purported rejection of the Blewett Offer violated Zubillaga's express sixty-day right to consider the offer and decide whether to meet that offer. Because the parties negotiated the sixty-day timeframe and consideration supported that contractual term, the term was binding on Bransford. (Dkt. 22 at Ex. A (stating right of first refusal supported by "good and valuable consideration as part of the overall transaction")); *see also Mobil*, 2004 WL 1013367, at *7 (noting right of refusal supported by consideration where underlying contract supported by consideration). As a result, once Bransford notified Zubillaga on March 7, 2022, that she intended to accept the Blewett Offer, Zubillaga had sixty days, or until May 6, to meet the Blewett Offer. When Zubillaga notified Bransford in writing of his intent to meet the offer on April 21, an enforceable contract arose between Bransford and Zubillaga for the sale of the 675 acres according to the terms and conditions of the Blewett Offer. Accordingly, Zubillaga is entitled to specific performance. *See Kessler v. Tortoise Dev., Inc.*, 1 P.3d 292, 298 (Idaho 2000) (providing equitable remedy of specific performance is available if legal remedies are inadequate and presuming inadequacy of legal remedies in action for breach of agreement regarding real estate).

Zubillaga is not entitled to an award of damages, however. On summary judgment, Zubillaga argues he should be awarded "incidental damages" in the amount of $12,220, which he incurred in obtaining an appraisal of and a title commitment for the 675 acres. Zubillaga incurred these costs in determining whether to meet the Blewett Offer. Zubillaga fails to cite any authority for the proposition that he is entitled to recover these costs. Because Zubillaga incurred the costs in deciding whether to meet the Blewett Offer and because he is entitled to specific performance of the parties' agreement, Zubillaga is not entitled to and cannot recover his due diligence costs against Bransford.

## IV.  ORDER

**IT IS ORDERED that:**

1. Plaintiff's Motion for Summary Judgment (Dkt. 19) is **GRANTED**.

2. Defendant's Motion for Summary Judgment (Dkt. 27) is **DENIED**.

3. Defendant's Motion in Limine (Dkt. 32) is **MOOT**.

DATED: December 08, 2023

Amanda K. Brailsford
U.S. District Court Judge